FILED'09 NOV 20 16:34 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HARRY AND DAVID,
an Oregon corporation

                Plaintiff,

    v.

J&P ACQUISITION, a Delaware corporation,
DONALD HACHENBERGER, and GLENDA
HACHENBERGER

                Defendants.

Case Number CV 09-3056-CL

**REPORT & RECOMMENDATION**

Clarke, Magistrate Judge:

    Plaintiff Harry and David ("Plaintiff"), an Oregon corporation, filed a complaint against Defendants J&P Acquisition, a Delaware corporation, Donald Hachenberger, a Florida resident, and Glenda Hachenberger, a Florida resident, for breach of contract, a promissory note, and personal guaranties.

    Defendants Donald Hachenberger and Glenda Hachenberger ("Defendants Hachenberger") filed a motion asking the court to dismiss Plaintiff's complaint for lack of personal jurisdiction. In the alternative, they seek dismissal or transfer of the action to Delaware where they contend jurisdiction and venue are proper. (Defendants Donald Hachenberger's and

Report & Recommendation 1

Glenda Hachenberger's Mot. to Dismiss for Lack of Personal Jurisdiction and for Improper Venue ("Defs.' Mot. to Dismiss") 2.)

For the reasons set forth below, the Court recommends granting Defendants Hachenberger's motion to dismiss without prejudice, with leave to re-file against Defendants Hachenberger in Delaware where the valid choice of law clause in the Purchase and Sale Agreement specifies.

**I.      Factual Background**

On or about March 30, 2007, J&P Acquisition, Inc. ("J&P") purchased from Plaintiff the company Jackson and Perkins Wholesale, Inc. ("Jackson and Perkins"). Various agreements were executed, including a Purchase and Sale Agreement ("Purchase Agreement"), at least one Promissory Note, and a Supply Agreement.

The Purchase Agreement was consummated in Jackson County, Oregon. (Pl.'s Resp. to Mot. To Dismiss ("Pl.'s Resp.") 3.) Glenda and Donald Hachenberger signed this agreement as guarantors. (Defs.' Mot. to Dismiss 6.) Both Glenda and Donald Hachenberger signed the Purchase Agreement when they were physically located outside the state of Oregon. (Decl. of Donald Hachenberger, ¶ 3-6; Decl. of Glenda Hachenberger, ¶ 6.) Donald Hachenberger traveled to the state of Oregon in his corporate capacity to discharge his duties as an officer of J&P. (Defs.' Mot. To Dismiss 6.) The business transaction was negotiated and closed in New York City, NY, at the offices of Jones Day. (Defs.' Reply 5.)

The Purchase Agreement contains a choice of law provision in which the parties agreed to jurisdiction in the state of Delaware:

All questions concerning the construction, validity and interpretation of this

Report & Recommendation 2

> Agreement will be governed by and construed in accordance with the domestic laws of the State of Delaware, without giving any effect to any choice of law or conflict of law provision.
> . . .
> Each of the Parties submit to the exclusive jurisdiction of any Federal or state court sitting in the City of Wilmington, Delaware, in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated herein and agrees that all claims in respect of such action or proceeding may be heard and determined in any such court. Each of the Parties waives any defense of inconvenient forum to the maintenance of any action or proceeding so brought and waives any bond, surety or other security that might be required of any other Party with respect thereto.

(Decl. Of Donald Hachenberger, Exhibit 1 ("Purchase Agreement"), Sections 11.9 - 10.)

William H. Williams signed this agreement on behalf Sellers of Harry & David Operations Corporation, as President, and CEO and on behalf of Bear Creek Direct Marketing, Inc., as President and C.E.O. Charles Fox signed this agreement on behalf of the Purchaser, J&P Acquisition, Inc., as President. Donald and Glenda Hachenberger signed the agreement as guarantors. (Purchase Agreement 70-72.)

On April 10, 2007, Plaintiff and J&P executed a Promissory Note and a Supply Agreement. Neither Donald nor Glenda Hachenberger were signatories on these documents. The Promissory Note stated,

> The Company submits to the exclusive jurisdiction of any Federal or state court sitting in Jackson County, Oregon. In any action or proceeding arising out of or relating to this Note and agrees that all claims in respect of such action or proceeding may be heard and determined in any such Court. The Company waives any defense of inconvenient forum to the maintenance of any action or proceeding so brought and waives any bond, surety or other security that might be required of the Payee with respect thereto.

(Compl., Ex. A ("Senior Promissory Note"), 4.) Charles Fox signed this note.

The Supply Agreement also had a governing law provision:

Report & Recommendation 3

> This Agreement will be construed in accordance with federal law and, to the extent not inconsistent thereto, with the laws of the courts in the jurisdiction of the principal place of business of the non-moving party, without regard to any choice of law provisions. Each Party and each Affiliate of each Party hereby submits itself for the sole purpose of the Agreement and any controversy arising hereunder to the jurisdiction of the courts of the jurisdiction of the principal place of business of the non-moving party and waives any objection to the grounds of lack in jurisdiction (forum non-conveniens or otherwise) to the exercise of such jurisdiction over it by any such courts.

(Am. Compl., Ex. B ("Supply Agreement"), Section 5.5.)   Charles Fox signed this agreement on behalf of J&P Acquisition, Inc., as President, and Steven V. O'Connell signed as CFO of Harry & David Operations Corporation. (Supply Agreement 11.)

At the time the agreements were consummated, J&P had offices in Plaintiff's corporate office building located in Medford, Oregon, and had been occupying those offices for more than a year. J&P continues to maintain offices and employees in Jackson County, Oregon. (Pl.'s Resp. 3.)

Plaintiff filed its complaint against Defendants J&P and Donald and Glenda Hachenberger on June 18, 2009, claiming that the parties breached their obligations under the promissory notes. (Compl. 1.)   Plaintiff then filed an amended complaint on July 16, 2009. (Am. Compl. 1.)

## II.     Legal Standards

To determine whether personal jurisdiction exists, the court may consider the pleadings and evidence presented through affidavits, and may also order limited discovery to develop jurisdictional facts. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir.2001); Data Disc, Inc. v. Sys. Tech. Assoc., 557 F.2d 1280, 1285 (9th Cir.1977).

Plaintiff bears the burden of establishing that this court has personal jurisdiction over

Report & Recommendation 4

defendant. See Fireman's Fund Ins. Co. v. Nat'l Bank of Coop., 103 F.3d 888, 893 (9th Cir.1996) (nonmoving party has burden of establishing personal jurisdiction). Plaintiff need only make a *prima facie* showing of facts that support exercising jurisdiction over defendants. Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1168 (9th Cir.2006).

Personal jurisdiction over a non-resident defendant is tested under a two-prong analysis: the exercise of jurisdiction must (1) satisfy the requirements of the long arm statute of the state in which the district court sits; and (2) comport with principles of federal due process. Terracom v. Valley Nat. Bank, 49 F.3d 555, 559 (9th Cir.1995); Ziegler v. Indian River Cty., 64 F.3d 470, 473 (9th Cir.1995). Regarding the first prong, the applicable long-arm statute extends the power of Oregon courts to exercise personal jurisdiction to "any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States." Or. R. Civ. P. 4(L).

The due process clause of the United States Constitution protects persons from being subject to the binding judgments of a forum with which they have "established no meaningful contacts, ties, or relations." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (citing Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 319 (1945)). Due process requires that a defendant have "minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 839 (9th Cir.1986) (citing Int'l Shoe Co., 326 U.S. at 316). Minimum contacts encompasses two types of jurisdiction: general and specific. See Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir.1990).

For a defendant to be subject to general personal jurisdiction, the defendant must have

Report & Recommendation 5

such "continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." Reebok Intern. Ltd. v. McLaughlin, 49 F.3d 1387, 1391 (9th Cir.1995). The standard for general jurisdiction is high, requiring that the contacts in the forum "approximate physical presence." Tuazon, 42 F.3d at 1169.

Alternatively, specific personal jurisdiction exists where: (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself or herself of the privileges of conducting activities in the forum; (2) the claim arises out of, or results from, the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. Bancroft & Masters, Inc. v. Augusta National Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). Purposeful availment requirement is satisfied "if the defendant has taken deliberate action within the forum state or if he has created continued obligations to forum residents." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995.) If the plaintiff meets the first and second elements, the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would be unreasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir.2004) (citing Burger King, 471 U.S. at 476-78)).

In analyzing whether a defendant purposefully availed himself to a forum, the Ninth Circuit has used the "Calder effects test." Schwarzenegger, 374 F.3d at 803. In the "Calder effects test" plaintiff must demonstrate that defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that defendant knows is likely to be suffered in the forum state. Schwarzenegger, 374 F.3d at 803 (citing Calder v. Jones, 465 U.S. 783 (1984)).

Report & Recommendation 6

### III.  Court Does Not Have Personal Jurisdiction Over Defendants

Defendants Hachenberger filed this motion to dismiss arguing that the Court does not have personal jurisdiction. They argue that Plaintiff has failed to make a *prima facie* showing in its complaint that personal jurisdiction over Defendants Hachenberger is proper and that there is no evidence on record of contact with Oregon to support being haled into court. Defendants Hachenberger ask the Court to dismiss the action against them without allowing Plaintiff to amend its complaint. (Defs.' Mot. to Dismiss 5.)

#### A.  No General Personal Jurisdiction

Defendants Hachenberger argue that there are no minimum contacts between Donald and Glenda Hachenberger and the state of Oregon to comport with the requirements of due process. They contend that they cannot be haled into court in their personal capacities. (Defs.' Mot. to Dismiss 5.)

Plaintiff asserts that there are minimum contacts because of the Defendants' conduct: "[b]ecause 1) the company's contacts with the state of Oregon were substantial, 2) Donald Hachenberger had personal contacts with the state of Oregon, and 3) the personal guarantees were non-negotiable conditions to [Plaintiff] entering the Agreement, personal jurisdiction is appropriate." (Pl.'s Resp. 3-4.)

Plaintiff asserts five facts:

1. The Purchase and Sale Agreement was consummated in Jackson County, Oregon.
2. J&P Acquisition had offices in plaintiff's corporate office building in Medford and was occupying those offices for more than a year.
3. J&P had approximately 30 employees between the time period of April, 2007 and August, 2008.
4. Donald Hachenberger came to Oregon to perform due diligence investigations

Report & Recommendation 7

   prior to the sale.
   5. J&P Acquisition maintains offices and has employees in Jackson county to this very day.

(Pl.'s Resp. 3.)

J&P has conceded to jurisdiction in Oregon. (Defs.' Reply 9.) While Defendants Hachenberger do not dispute that Donald Hachenberger traveled to Oregon on one occasion to discharge his duties as an officer of J&P, they argue that this visit does not establish sufficient contacts for general personal jurisdiction because it was not done in his personal capacity. (Def.'s Mot. to Dismiss 6.) See Mattel, Inc. v. Greiner and Hausser GMBH, 354 F.3d 857, 863 (9th Cir. 2003).

A single visit on Donald Hachenberger's part, in his corporate capacity, is not enough to meet the high standard for general personal jurisdiction. Donald Hachenberger traveled to Oregon as an officer and director of J&P on one occasion prior to the purchase of Jackson and Perkins "to discharge [his] duties in [his] official corporate capacity." (Decl. Donald Hachenberger ¶ 7.) Defendants Hachenberger assert in their declarations that they have no connection to Oregon by pointing out their state residency is Florida, they own no Oregon property, and they have no general business or financial obligations in the state. (See Decl. of Glenda Hachenberger ¶¶ 8-18 and Decl. of Donald Hachenberger ¶¶ 8-19.) While Plaintiff argues there "continuous and systematic" contacts with Oregon, Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415 (1984), from the facts alleged, the Court cannot conclude the contacts in the forum "approximate physical presence" for Defendants Hachenberger. See Tuazon, 42 F.3d at 1169.

Report & Recommendation 8

### B.     No Specific Personal Jurisdiction

Defendants Hachenberger also argue that the Court does not have specific personal jurisdiction over them. (Defs.' Mot. to Dismiss 8.) They argue that they have not acted within the forum to purposefully availed themselves of Oregon law, that they have no forum-related activities that are related to the breach of obligations at issue here, and that the exercise of jurisdiction would be unreasonable. See Mattel, 354 F.3d at 863 ("(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.") Plaintiff, however, argues that Defendants Hachenberger's actions of personal guaranties and involvement in the purchase of J&P have availed them to Oregon. Plaintiff argues that Defendant Donald Hachenberger's visit to Oregon cannot be overlooked as simply a corporate action. (Pl.'s Resp. 4.)

Plaintiff cites Oregon Supreme Court case law in which the court found that personal guaranties can satisfy the standards for due process and establish personal jurisdiction. In State of Oregon ex rel. Ware v. Hieber, the court concluded

> [f]rom the standpoint of 'fairness' to the parties and convenience to the parties and from the standpoint of the interests of the State of Oregon, we are of the opinion that the personal guaranty of the Wares must be considered as one aspect of the entire course of business between Keller Enterprises and Black Diamond.

515 P.2d 721, 724-25 (Or. 1973). In Hieber, the guaranty agreement signed by the Wares was essential to the continuation of the business relationship. Mr. Ware traveled to Oregon to commence the contractual relationship and physically transported the products of the sale from

Report & Recommendation 9

Oregon to California. Id. at 724. The court later qualified its ruling in the similar case of State ex rel. Sweere v Crookham, 609 P.2d 361 (Or. 1980). There, the court explained that the Hieber court "held it would be proper to 'pierce the veil' by imputing contacts between Oregon and the corporation to the Wares." Id. at 364. It further qualified that the contacts between the forum state and the foreign corporation's guarantor's "must be limited to circumstances in which the guaranty plays a more integral part in causing or promoting significant economic consequences in Oregon." Id. In Crookham, the court ultimately determined that Oregon did not have personal jurisdiction over the out-of-state relator, concluding that it was unfair to impute his company's contacts with the state of Oregon to him where he as the relator had no control or interest in the company. Id. at 10.

Here, Plaintiff argues that there is jurisdiction because Defendants Hachenberger executed personal guaranties on the Purchase Agreement: "the personal guarantee demonstrates that he was conducting due diligence prior to the sale for his personal benefit and Glenda Hachenberger's personal benefit as well as the corporate benefit. The personal guarantees, which were an essential element of the sale, give Oregon jurisdiction over both defendants." (Pl.'s Resp. 4.)

However, these personal guaranties on the Purchase Agreement do not warrant personal jurisdiction given all of the circumstances. The fiduciary shield doctrine does apply to Defendant Donald Hachenberger. "A corporate officer who has contact with a forum only in the performance of his official duties is not subject to the personal jurisdiction of the courts in that forum." Sidco Industries, Inc. v. Wimar Tahoe Corp., 768 F.Supp. 1343, 1349 (D. Or. 1991). The circumstances do not warrant "piercing the corporate veil" as Plaintiff contends.

Report & Recommendation 10

The circumstances here are unlike <u>Hieber</u>, where the court found jurisdiction and summarized, "Mr. Ware had not found it inconvenient to come to Oregon to commence the contractual relationship with Black Diamond. It should be no more inconvenient for him to come to Oregon to litigate the controversy attending the termination of the relationship." <u>Hieber</u>, 515 P.2d at 725. The guarantor traveled to Oregon not only to sign the agreement but also to transport products for his own business use from Oregon to California.

In contrast, the Purchase Agreement did not begin and end in Oregon. It was consummated in Oregon, negotiated and closed in New York, signed by Defendant Donald Hachenberger in Florida, and signed by Defendant Glenda Hachenberger in Colorado. (Pl.'s Response 3; Defs.' Reply 5, Decl. of Donald Hachenberger ¶ 6; and Decl. of Glenda Hachenberger ¶ 6.) Defendant Donald Hachenberger asserted, "I traveled to Oregon on one occasion prior to the purchase of Jackson and Perkins to discharge my duties in my official corporate capacity." (Decl. of Donald Hachenberger ¶ 7.) And, as will be discussed below, the parties negotiated and agreed to Delaware as the jurisdiction, should conflicts arise.

The contacts justifying jurisdiction in <u>Hieber</u> are thus distinguishable from the contacts here. Given the totality of the circumstances and the nature of the contacts, personal jurisdiction over Defendants Hachenberger would be unreasonable.

IV.     **Defendants Hachenberger Agreed to Delaware as the Appropriate Forum**

There are at least three agreements that were consummated in the purchase and sale of Jackson and Perkins. Each agreement contains a different choice of law provision. The Purchase Agreement designates Delaware, the Promissory Note designates Jackson County, Oregon, and the Supply Agreement designates the principal place of business of the non-moving party.

Report & Recommendation 11

Plaintiff argues that the three agreements should be read as a whole because they were executed at the same time. Oregon case law provides, "[w]hen parties contemporaneously execute multiple agreements that address interrelated subjects, we are bound to construe them together as one contract to discern the parties' intent." Snow Mountain Pine, Ltd. v. Tecton Laminate Corp., 869 P.2d 369, 372 (Or. App. 1993) (citing Hays v. Hug, 412 P.2d 373, 374 (Or. 1966). The court employs this analysis when agreements were made at about the same time, by the same parties, and as a part of the same transaction. Hays, 412 P.2d at 374.

Plaintiff further argues, "the forum selection clause in the Promissory Note and the Purchase Agreement are in direct conflict and there is no way to give effect to both documents even though they should be considered as part of a single document because they were executed at the same time." It argues that jurisdiction should be in Oregon and not Delaware so as not to "contravene a strong public policy that all issues central to the matter be resolved in the jurisdiction where the action is pending." (Pl.'s Resp. 5.) See Richards v. Lloyds of London, 135 F.3d 1289, 1294 (9th Cir. 1984) (Supreme Court identified three grounds for repudiating a forum selection clause: (1) clause was included due to fraud or overreaching, (2) if the party wishing to repudiate the clause would be deprived of his day in court were the clause enforced, and (3) if enforcement of the clause would contravene with a strong public policy of the forum in which suit is brought.)

Plaintiff asserts that Harry and David's decision to proceed with the sale was contingent on the guaranties of Defendants. Senior Vice President and General Counsel Robert Bluth declared,

Report & Recommendation 12

> I was involved on behalf of Harry and David in negotiating a purchase agreement with J&P Acquisition, Inc., including the Promissory Note and the related ancillary documents and agreement. The execution of personal guarantees by Donald Hachenberger and Glenda Hachenberger were specifically agreed upon as the security for, among other things, payment on the Promissory Note and were an essential condition to plaintiff in entering into the agreement to sale to J&P Acquisition. Had the Hachenbergers refused to personally guarantee the Purchase Agreement or offer other security acceptable to Harry and David, Harry and David would not have entered into the Purchase Agreement.

(Decl. of Robert Bluth 2.)

The three agreements, however, cannot be read as a whole in these circumstances because the parties to the agreement are not the same. The Purchaser and Seller remain the same throughout, but the Defendants as Guarantors only signed the Purchase Agreement. The Purchase Agreement was signed in March 2007 and the Promissory Note and Supply Agreement were signed in April 2007.

Plaintiff's argue that the Defendants Hachenberger's guaranties on the Purchase Agreement was essential to Harry and David's decision to see Jackson and Perkins to J&P. It concludes that all agreements should be treated as one, but its rationale is confusing and not well taken. Plaintiff's complaint attached only the "ancillary agreements" signed by J&P as a basis for the suit. It was Defendants Hachenberger who submitted the Purchase Agreement for the Court's review. Now Plaintiff appears to argue that the guarantors are essential to making the agreement but the terms of the very same agreement designating choice of law, to which they all agreed, are not. Plaintiff's argument begs the question that if the Purchase Agreement with the guaranty was so essential and Oregon jurisdiction is so essential -- as the court assumes because of the Plaintiff's current pleadings, why did all the parties agree to a choice of law provision designating Delaware.

Report & Recommendation 13

Oregon policy favors forum selection clauses that were freely negotiated. See Reeves v. Chem Industrial Co., 494 P.2d 729 (Or. 1972) (finding that Forum selection clauses are favored in Oregon, absent overreaching or fraud). The evidence shows that the parties freely negotiated the Purchase Agreement to include the forum selection clause for Delaware. Defendants Hachenberger signed as guarantors under the belief that any lawsuit would be brought in Delaware. (Decl. of Donald Hachenberger ¶ 5; Decl. of Glenda Hachenberger ¶ 5.)

Plaintiff has not shown that Defendants Hachenberger should be subject to jurisdiction in Oregon based on agreements that Defendants Hachenberger have not signed and a forum selection to which they did not negotiate. Defendants Hachenberger have no contacts with Oregon and reside out-of-state. It is understandable why they negotiated to litigate outside of Oregon. Harry and David is also a Delaware corporation, and it is not unreasonable to conclude the Harry and David would agree to this term.

## V.  Conclusion

The complaint against Defendants Hachenberger should be dismissed without prejudice. Defendants have not personally availed themselves to Oregon. Further, the parties executed an agreement with a valid choice of law provision designating Delaware as the jurisdiction for litigation. The claims against Defendant J&P Acquisition remain unchanged.

## VI.  Recommendation

Defendants Hachenberger's motion to dismiss (#19) should be granted. The complaint against Donald and Glenda Hachenberger should be dismissed without prejudice. The Court should grant leave for Plaintiff to refile against Defendants Hachenberger in the state of Delaware.

Report & Recommendation 14

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by* **December 11, 2009.** *If objections are filed, any responses to the objections are due within 10 days, see Federal Rules of Civil Procedure 72 and 6.* Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 20 day of November, 2009.

_____
MARK D. CLARKE
United States Magistrate Judge

Report & Recommendation 15